JESSE SANDERLIN and WILLIAM SANDERLIN, administrators of Henry Sanderlin, deceased, plaintiffs in error, vs. SARAH E. SANDERLIN et al. defendants in error.

[1.] It is not proper, that a question to a witness, should assume that he has made a statement which, he says, he has not made.

[2.] A slave passed from the father to the son, on the marriage of the son, the question was, whether the slave so passed as a gift, or as a loan. The father had said, a month before, the marriage, that he intended to give the son the slave.

*Held*, that evidence of this saying was admissible against the father.

[3.] A bill contained a statement that H. S. died "seized" of a certain slave. The answer said that H. S.' and J. S. called on the defendant to bear witness that H. S. held the slave as a loan.

*Held*, that this was *responsive*.

[4.] An admission that a gift of a slave has been cancelled, is that from which a jury is *authorized*, though not *bound*, to infer a *delivery* back of the slave.

In Equity from Randolph county. Tried before Judge KIDDOO, at May adjourned term, 1857.

Sarah Sanderlin and others, as heirs and distributees of Henry Sanderlin, decd., filed this bill against Jesse and William Sanderlin, administrators of said deceased, to compel them to account for a negro man named Elias, which complainants alleged belonged to the estate of intestate.

It appeared that Jesse Sandlin, one of the defendants, was the father of deceased. That Jesse, before the marriage of his son Henry, owned the boy Elias; that shortly after the marriage of his son, which occurred about the first of January, 1847, the father gave the boy to his son, or permitted him to go into his possession, where he remained until Henry's death, about the last of 1851.

After Henry's death, his father took possession of the negro, claiming him as his own, and alleging that he had only loaned him to his son, and that if he had in the first instance given the boy to Henry, that afterwards it was agreed between them that he should hold him as a loan, and not as a gift.

Sanderlin & Sanderlin, adm'rs, vs. Sanderlin et al.

The question was, whether the negro was held by Henry Sanderlin, in his lifetime, as a gift, or a loan from his father.

The first witness examined for complainants was Isaiah Holmes, the father of Mrs. Sanderlin, who testified that in the spring of 1847, Jesse Sanderlin told him, that he had given Elias to Henry, and Bob to William, and had charged each $500. That Henry married the daughter of witness in December, 1846. They went to house-keeping the latter part of January, 1847. The negro Elias went into Henry's possession in February or first of March, 1847, and remained there until Henry's death, in December, 1851. Negro worth $1200, annual hire $150.

1. Complainant then proposed to prove by the witness the amount of property owned by Jesse Sanderlin. The defendant objected to the question; objection overruled, and defendant excepted.

2. Before the cross examination this witness was asked by defendant's counsel, " If he had not told James Newton, at the April term of the Superior Court, that he had told Wm. Johnson, after the death of Henry Sanderlin, that said boy Elias did not belong to witness, nor to Sarah E. Sanderlin, and never had, but belonged to Jesse Sanderlin, and he had known it all the time, for Jesse Sanderlin paid taxes on him ?" To which question witness answered, No. Defendant's counsel then proposed to ask witness "that if he had told Johnson or Newton such things, had not he, witness, told the truth." To this question complainants' counsel objected. The Court sustained the objection, and this ruling constitutes the ground of defendants' 2d exception.

3. The counsel for defendant then asked the witness how much property he, witness, was worth or owned. Counsel for complainant objected. The Court sustained the objection and defendants excepted.

4. Lewis Sanderlin, examined on the part of complainants, testified that about a month or two before the marriage of Henry Sanderlin, Jesse Sanderlin, his father, told him (witness) that

Sanderlin & Sanderlin, adm'rs, vs. Sanderlin et al

Henry was going to marry Miss Holmes, and when he married he intended to let him have Elias.   Counsel for defendant objected to complainant's proving the intention of Jesse Sanderlin a month or two before the marriage of his son. The Court overruled the objection and defendant excepted.

5. After the testimony was closed, the Court, amongst other things, charged the jury that if the negro was a gift, then the father had no more right to the property than a stranger. He might, for a valuable consideration, buy him back and then give or loan him at pleasure.   But a mere agreement after the gift, that it should thenceforth be considered a loan and not a gift, without a consideration or change of possession, would not pass the title back from the son to the father, especially if done to avoid the payment of the son's debts.   In such a state of facts the presumption would be that the transaction was not *bona fide*, and therefore a nullity.

The Court was requested to charge the jury as to the responsive character of a certain part of defendant's (William Sanderlin) answer.  The allegation of the bill was that Henry Sanderlin died seized and possessed of Elias *as his own right and property*.   Defendant answered that "he died possessed of the negro, but not as his own right and property ; the negro was the property of Jesse Sanderlin, and that he, defendant, had been called on by Jesse and Henry Sanderlin to witness that the negro was a loan and not a gift."   The Court held and instructed the jury that the first part of this answer was responsive to the bill ; the latter part was not.   To this charge and instruction defendant's counsel excepted.

6. Defendant's counsel requested the Court to charge the jury,

1st. That in equity cases it requires the evidence of two witnesses, or one witness and corroborating circumstances to overthrow the answer of defendant.

2d. That corroborating circumstances alone will not overcome the answer, but it must be taken as true unless it is dis-

proved by two witnesses, or by one witness and corroborating circumstances.

3d. That whatever is contained in the answer is evidence, if it is responsive to the bill, or in explanation of what is responsive thereto.

4th. If the negro went into possession of the son as a loan it remained a loan unless it was afterwards changed by the parties.

5th. If the jury, from all the evidence, believe it was intended as a loan, and so understood by the parties, then they must find for the defendants.

6th. The Court, after reading over each of the above charges, at the end of each, remarked, " Yes, gentlemen that is law," without any other or further charge, or remark. And to this manner of charging, defendant excepted.

7th. Defendants counsel then requested the Court to charge the jury, that if the negro went into the possession of the son as a gift, and the father and son afterwards rescinded the gift and agreed to make it a loan, then it became a loan, and no other person had a right to interfere with it, which charge the Court refused to give, and defendant excepted.

Defendant further requested the Court to charge the jury, that if the jury should even believe that the negro was a gift in the first instance, still if the parties agreed that it should be changed, and the defendant took back the negro and let his son have it as a loan, and if the son consented to this for the purpose of benefitting himself, either by thus running no risk of the negro's dying, or for any other valuable consideration, that he had a right to make the change, and he thereby parted with the title, which charge the Court refused to give and defendant excepted.

DOUGLASS & DOUGLASS, and TUCKER & BEALL, for plaintiffs in error.

PERKINS, BARRY, HOOD & ROBINSON, *contra*.

*By the Court.*—BENNING, J. delivering the opinion.

Did Henry Sanderlin, on his marriage, receive the slave from his father, Jesse Sanderlin, as a gift, or as a loan? If, as a gift, was the gift cancelled and the slave given back to the father?

These are the two main questions in this case.

The Court allowed the "complainants to prove the value and kind of property of Jesse Sanderlin." The first exception is to this decision.

Is the fact, that a man was able to do a thing which, he perhaps, ought to have done, evidence that he did it? Doubtful, certainly.

Judge McDonald is clear, that the Court erred in this decision, and the other two members of the Court are not prepared to say, that he is wrong in that opinion. They are clear that there were errors on other points, and that makes it the less necessary, that they should express a more decided opinion on this point.

The second exception is thus stated : "That the Court erred in refusing defendant's counsel to ask witness, Josiah Holmes, if he told the truth when he told William Johnson that the negro did not belong to him, witness, nor to Sarah E. Sanderlin, nor never did, but belonged to Jesse Sanderlin, and that he had known it all the time, for that Jesse Sanderlin had, all the time, paid taxes on him."

[1.] It is assumed in this question that the witness had told Johnson a particular thing. The witness had denied telling Johnson that thing. This, therefore, was an assumption which the counsel asking leave to put the question, was not authorized to make. It was right in the Court, therefore, to refuse leave to put the question.

The second exception then is not good.

The same is true of the third. The quantity of property owned by Holmes, though he was Mrs. Sanderlin's father, could not possibly have any bearing on either of the issues.

One of the questions being, whether the slave passed from Jesse Sanderlin, the father, to Henry Sanderlin, the son, as a gift, or as a loan, the intentions of Jesse, existing even so long as a month before the time when the slave did so pass, were entitled to some respect. And if they were entitled to any respect, however small, evidence of them was admissible.

There is nothing, then, in the fourth exception.

The bill states that Henry Sanderlin died "seized and possessed, as of his own right," of "a man slave named Elias," "which slave had been in the possession and under the control of said Henry for more than four years immediately preceding his death, as of his own right and property."

This statement amounts to saying that Henry Sanderlin held the slave as his own property, and not as a loan from anybody.

A part of the answer of Wm. Sanderlin is in these words, "that he (Wm. Sanderlin) was called upon by Jesse Sanderlin, the father of said Henry Sanderlin deceased, and the said Henry, to witness that said boy Elias was only loaned to the said Henry, deceased, and not given to him."

This part of his answer the Court held not to be responsive to the statement aforesaid, in the bill. Two of us, Judge Lumpkin and myself, think that it was.

[3.] The answer to a bill has to be upon the *"information,"* as well as upon the knowledge, remembrance and belief, of the party answering. He, therefore, is directly called on to state what his "information" is.

The Court refused to charge the following request:

"If the negro went into the possession of the son as a gift, and the father and son afterwards rescinded that gift and agreed to make it a loan, then it became a loan, and so remained, and no other person has a right to interfere with it."

Was there any evidence to authorize this request? Judge McDonald thinks that there was not. Judge Lumpkin and myself think that there was.

Hay, a witness of the complainants, testified that he heard Jesse Sanderlin say that he "had let Wm. Sanderlin have Bob,' and charged him to him at five hundred dollars, and had let Henry have Elias, intending to charge him in the same way, but neglected to do it; afterwards finding the boys in debt, and fearing they might get into difficulties, he proposed to let them have the negroes as a loan. Henry hesitated a moment and then said he would do it, that he believed he would rather take him that way, for if the negro died he would not lose him."

This amounts to a statement by Jesse Sanderlin, that the gift had been rescinded, and in its place a loan of the negro substituted.

And such a statement is, in the opinion of Judge Lumpkin and myself, sufficient to authorize a jury to infer that every thing took place necessary to make the rescision and substitution good; and therefore, sufficient to authorize a jury to infer that a delivery, (either actual or symbolical) of the negro, by the son to the father, and a redelivery by the father to the son, took place. True, we two do not think that a jury would be *bound* to infer this, but merely that they might do so. And certainly a jury ought not to do so if the other evidence was such as to satisfy them that the inference could not be made. These are questions for the jury.

But if the statement amounted to this much, it was sufficient to authorize this request. The Court, then, in the opinion of Judge Lumpkin and myself, ought to have charged the request.

The rest of the Court's charge needs but a single remark. The contest in the case was between the father, and the representatives of the son, not between the father and creditors of the son. Therefore, it was quite immaterial, whether the cancellation between father and son, if there was a cancellation, was made to defraud the son's creditors or not.

New trial ordered.

McDonald J., dissenting.

When a gift is perfected by the delivery of the property to the donee, in order to convert the gift into a loan, the property must be revested in the donee, for by the gift the title passed from him.    To do this there must be either a conveyance in writing, or an actual or symbolical delivery of the property, and there being no evidence of either in this case, the presiding Judge ought not to have given the charge, on that point, as requested by the defendant's counsel.

The property remained in the possession of the donee down to his death, if indeed there was a gift; and there having been no conveyance or redelivery of the property to the original donor, to consummate a gift from Henry Sanderlin to Jesse Sanderlin, the charge ought not to have been given.

If the property had returned to the possession of the donor and had remained with him, the admissions of the donee that the gift had been cancelled, made while the property was in the possession of the original donor, would have been admissible.